**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**
**DEWAYNE BROWN,**

                              **Plaintiff,**

         **v.**                                        **5:11:CV:852**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**

**THOMAS J. McAVOY**
**Senior United States District Judge**

<u>**DECISION & ORDER**</u>

**I. BACKGROUND**

        Plaintiff Dewayne Brown brought this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, appealing the final decision of the Social Security Administration denying

his claim for Social Security benefits.  Presently before the Court are the Plaintiff's and

Defendant's motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

**II. FACTS**

        **a. Procedural History**

        As of September 1986, Plaintiff was found disabled based upon a learning disability

and mental retardation.  He continued his claim in February 2000 and March 2003 based on

medical reasons.  Benefits were suspended when Plaintiff was incarcerated from September

30, 1997 to May 6, 1998 and from November 28, 2001 to July 16, 2002.  Benefits were

reinstated upon Plaintiff's release from prison.  On May 8, 2004, Plaintiff was incarcerated for

a period exceeding twelve months.  Consequently, his benefits were terminated.

Plaintiff filed an application for social security income benefits with a protective filing date of October 30, 2006.  He alleged disability beginning May 1, 1990 due to impairments of mental retardation and a learning disorder.  <u>See</u> Administrative Hearing Transcript [hereinafter "T."] at 79-81, 107.  His application initially was denied on March 7, 2007.  T. 45-52.  On June 12, 2007, Plaintiff timely requested a hearing with an Administrative Law Judge.  T. 53-54.  A hearing was held on June 30, 2009 in Syracuse, New York before Administrative Law Judge ("ALJ") Marie Greener.  T. 26-43.

On August 3, 2009, ALJ Greener issued an unfavorable decision.  T. 14-25.  Ten days later, Plaintiff requested review of that decision.  T. 12-13.  On May 6, 2011, the Appeals Council denied Plaintiff's request for review.  T. 2-7.  Plaintiff then filed the instant action.

### b. Medical Background

On February 5, 2007, an intelligence evaluation was completed by state agency consultant Jeanne A. Shapiro, Ph.D.  T. 187-91.  Plaintiff reported completing the 7th grade with special education services.  T. 187.  Plaintiff reported working part-time as an office cleaner for twenty hours a week since January 7, 2007 and having work experience as a cleaner and sander.  T. 187.  He reported a chronic medical condition of a heart murmur but stated he had no history of psychiatric hospitalizations or outpatient psychiatric treatment.  T. 187.  Plaintiff stated he was arrested in May 2004 for possession of a weapon and was sentenced to three to six years in prison.  T. 188.  He was then on parole for three years and subsequently again arrested when he was 24 years old and served twelve months in jail.  T. 188.

Dr. Shapiro reported that plaintiff's motor behavior was normal and his speech and language skills were adequate.  T. 188.  The doctor stated that plaintiff was cooperative and recalled and understood instructions.  T. 188.  She observed that plaintiff's style of responding was deliberate, orderly, and self-correcting.  T. 188.  Dr. Shapiro observed that Plaintiff worked slowly during the performance sub-tests and went past the time limit.  T. 188. She indicated, "[r]esults of the evaluation are considered to be valid and a reliable estimate of current functioning."  T. 189.  Dr. Shapiro related that plaintiff's attention and concentration were good and he did not show evidence of any significant emotional distress during the evaluation.  T. 188-89.

WAIS-III and WRAT-III tests were administered.  T. 189.  Results revealed a verbal IQ score of 68, performance scale IQ score of 64, and full scale IQ score of 64.  T. 189. Reading and decoding was at a 4th grade level equivalent.  T. 189.  Dr. Shapiro assessed that Plaintiff appeared to be incapable of reading, doing arithmetic, and writing at an age appropriate level.  T. 190.  Plaintiff reported that he does not go shopping or drive.  T. 190. Plaintiff told Dr. Shapiro that he took care of his personal needs, prepared easy meals, cleaned, did laundry, managed his money, and took public transportation.  T. 190.  He socialized with friends and family.  T. 190.  He watched television, listened to music, and spoke to friends on the phone daily.  T. 190.  Dr. Shapiro opined that Plaintiff could understand and follow simple instructions and could perform simple tasks with supervision and independently.  T. 190.

Dr. Shapiro opined that Plaintiff "may have difficulty with more complex tasks, instructions or directions."  T. 190.  She stated that plaintiff was capable of maintaining attention and concentration for tasks, regularly attending to a routine and maintaining a

schedule, and learning simple new tasks.  T. 190.  The doctor further opined that plaintiff was

capable of making some appropriate decisions, relating to and interacting appropriately with

others, and dealing with stress.  T. 190.

Dr. Shapiro concluded that "results of the examination are inconsistent with

allegations."  T. 190.  She reported that although plaintiff was functioning in the mild range of

mental retardation, he was able to perform rote tasks and could work in an appropriate

setting in a position for which he had been adequately trained.  T. 190.  The doctor

recommended that plaintiff consider vocational training and subsequent job coaching taking

into consideration plaintiff's level of intellectual functioning.  T. 191.  She added, "[t]he

claimant appears to be incapable of managing money because of mental retardation."  T.

191.  Dr. Shapiro concluded that plaintiff's prognosis was good.  T. 191.

On March 6, 2007, Dr. M. Apacible, Psychiatrist, completed a psychiatric review

technique form and mental residual functional capacity assessment.  T. 192-209.  He opined

that plaintiff had a mild restriction to activities of daily living, no difficulties maintaining social

functioning, moderate difficulties maintaining concentration, persistence or pace, and

insufficient evidence of repeated episodes of deterioration.  T. 202.  More specifically, Dr.

Apacible assessed moderate functional limitations in the abilities to: (1) maintain

concentration, persistence or pace; (2) understand and remember detailed instructions; (3)

carry out detailed instructions; (4) sustain an ordinary routine without special supervision; (5)

complete a normal workday and work week without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length

of rest periods; (6) accept instructions and respond appropriately to criticism from

- 4 -

supervisors; (7) respond appropriately to changes in the work setting; and (8) set realistic goals or make plans independently of others.  T. 202, 206-07.

Dr. Apacible reported that plaintiff was not significantly limited in his ability to (1) remember locations and work-like procedures; (2) understand, remember, and carry out short and simple instructions; (3) perform activities within a schedule; (4) work in coordination with or proximity to others without being distracted by them; (5) make simple work-related decisions; (6)  interact appropriately with the general public; (7) ask simple questions or request assistance; (8) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; (9) be aware of normal hazards and take appropriate precautions; and (10) travel in unfamiliar places or use public transportation.  T. 207.  Plaintiff had no evidence of a limitation in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  T. 207.  Dr. Apacible concluded that plaintiff had the ability to perform the four basic functions of simple work.  T.  208.

A physical conducted on June 13, 2008 by the Department of Correctional Services showed that plaintiff's gait was normal, his musculo-skeletal system was normal, and he was neurologically intact.  T. 229.  He had no limitations for work classification.  T. 229.  A chest x-ray was normal.  T. 232.

On June 24, 2008, Plaintiff completed an intake summary at Willard Drug Treatment Campus.  T. 222.  Plaintiff's history of hepatitis B was noted.  T. 222.  On December 15, 2008, Sulin Chung, M.S., a social worker at the Crouse Chemical Dependency Treatment Services, Outpatient Clinic Addiction Psychiatry Clinic, saw Plaintiff for complaints of chronic depression and substance abuse with marijuana and alcohol.  T. 216.  He said he last used marijuana a year ago and drank alcohol one month ago.  T. 216.  Plaintiff indicated

that he was at the appointment so he could have paperwork filled out to obtain SSI benefits. T. 216.  Plaintiff stated that he has been hearing voices since his grandmother passed away in 2003, but that Seroquel helped silence the voices.  T. 216.  Plaintiff reported that medications "slow him down."  T. 216.  Plaintiff reported marijuana use helped him sleep and made the voices go away.  T. 216-17.  Plaintiff reported seeing shadows in the past.  T. 216.

Concerning past psychiatric history, Plaintiff reported having depression while in prison and a learning disability since grade school.  T. 217.  Plaintiff reported being shot in the stomach at 16 years old with the bullet coming out of his spine.  T. 217.  Plaintiff reported special education throughout elementary school, being made fun of, and being involved in school fights.  T. 218.  Plaintiff reported a 20 pound weight loss in the past 2 months with loss of appetite.  T. 218.  Plaintiff told Mr. Chung that he had five children and lived in a shelter.  T. 217.  Plaintiff stated he had visited his mother every day at her house.  T. 217. He stated that he completed school through the ninth grade.  T. 218.  On the Hamilton Rating Scale for depression, plaintiff scored a 25, significant for feelings of guilt, insomnia, and loss of interest in activities.  T. 218.  Plaintiff stated that he had obsessive compulsive symptoms such as washing his hands often and that he was suspicious of people.  T. 218.  Mr. Chung wrote that plaintiff's speech was slow but clear and his thoughts were logical.  T. 218. Plaintiff denied any homicidal ideations.  T. 218.  Plaintiff's perceptions were positive for auditory and visual hallucinations.  T. 218.  Plaintiff was cooperative and fully oriented.  T. 218.  His insight and judgment were intact.  T. 218.  Plaintiff seemed to have suffered from depression and the voices since he was a young child around 11 or 12 years old.  T. 218. Plaintiff was prescribed Trazodone and Chlorpromazine.  T. 219.  Mr. Chung's notes were reviewed by Dr. Johnson.  T. 219.

On January 14, 2009, Marina Nesterenko, M.D. at Crouse Chemical Dependency Treatment Services, Outpatient Clinic Addiction Psychiatry Clinic, treated Plaintiff for a follow-up.  T. 214.  Plaintiff indicated that he was at the appointment so he could have paperwork filled out for his SSI application.  T. 214.  Plaintiff reported feeling increasingly depressed, having nightmares, insomnia, difficulty falling and staying asleep, and hearing voices telling him to hurt himself, which were worsening.  T. 214.  He had lack of motivation, no energy, and lack of interest.  T. 214.  Plaintiff reported worsening obsessive compulsive disorder ("OCD") symptoms, such as constantly washing his hands and cleaning his house.  T. 214.  Plaintiff reported being suspicious, having racing thoughts, having extreme variations in mood, and losing approximately 20 pounds in the past month.  T. 214.  Plaintiff was slightly hyper-verbal and speech volume was increased.  T. 214.  Mood was severely depressed, and affect was constricted.  T. 214.  Hamilton rating scale score was a 29.  T. 214.  Insight, judgment, and impulse control were limited.  T. 214.

Dr. Nesterenko reported that Plaintiff was alert and fully oriented, his cognition intact, his speech clear, his thoughts logical and that he denied any suicidal or homicidal ideations.  T. 214.  Ultimately, she diagnosed major depressive disorder with psychotic features, alcohol dependence, nicotine dependence, and marijuana dependence.  T. 214.  GAF score was assessed at 50.  T. 215.  Plaintiff's dosage of Chlorpromazine was increased from 100 mg to 200 mg to treat voices and insomnia and stabilize Plaintiff's mood.  T. 215.  Trazodone was continued.  T. 215.  An appointment was scheduled for the following week.  T. 215.

## III. STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g).  First, the Court must determine whether the Commissioner applied the correct legal standard.  Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).  Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record.  Id. at 773.  The Commissioner's finding will be deemed conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991); see also Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984) ("It is not the function of the reviewing court to determine de novo whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.") (citations omitted).

In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938).  Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations.  Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997).  Though the reviewing court must give deference to the Commissioner's decision, the Act is ultimately "a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion."  Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990) (quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**IV. DISABILITY DETERMINATION–THE FIVE STEP EVALUATION PROCESS**

To receive federal disability benefits, an applicant must be "disabled" within the meaning of the Social Security Act.  See 42 U.S.C. § 423(a),(d).  A claimant must establish "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  Id. § 423(d)(1)(A).  The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).  Agency rules promulgated under the Act outline a five-step analysis to determine disability.  20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

> (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience; (4) If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work; (5) If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw v. Carter, 221 F.3d 126, 132 (2d Cir. 2000).

Here, ALJ Greener found that at Step 1, Plaintiff had not engaged in substantial gainful activity since October 30, 2006, the date of the application.  T. 19-20.  At Step 2, ALJ

Greener found that Plaintiff's mild mental retardation constituted a severe impairment.  T. 20.

At Step 3, ALJ Greener concluded that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part

404, Subpart P, Appendix 1 (20 C.F.R. § 416.925 and §416.926).  T. 20.  At Step 4, ALJ

Greener found that Plaintiff had the residual functional capacity ("RFC") to perform a full

range of work at all exertional levels with the limitation that he only be required to

understand, carry out and remember simple (not complex) instructions.  T. 23-24.  Lastly,

ALJ Greener concluded that, based on Plaintiff's age, education, work experience and RFC,

there were jobs that exist in significant numbers in the national economy he could perform,

and denied Plaintiff's application for benefits.  T. 24-25.

## V. DISCUSSION

Plaintiff claims the following: (1) ALJ Greener erred by failing to properly develop

the record because she failed to combine the current application with the prior folder; (2) ALJ

Greener erred when she failed to find Plaintiff's major depressive disorder with psychotic

features to be severe; (3) Plaintiff's impairments meet the criteria for Listing § 12.05; (4) ALJ

Greener's RFC finding is not supported by substantial evidence; (5) ALJ Greener failed to

apply the psychiatric review technique; (6) ALJ Greener failed to apply the appropriate legal

standards in assessing Plaintiff's credibility; and (7) ALJ Greener's 5 step determination is not

supported by substantial evidence and is the product of legal error.  Dkt. #10.  For the

reasons that follow, this Court finds that ALJ Greener applied the correct legal standards and

was supported by substantial evidence in each of her findings.

**a. Whether ALJ Greener Failed to Develop the Record.**

Plaintiff claims that ALJ Greener erred when failing to combine his current application with his prior folder.  Plaintiff claims the information contained in his prior applications would refute ALJ Greener's finding that there is no objective evidence concerning his significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the development period.  The Commissioner responds that, pursuant to applicable procedure, he had no obligation to consider the prior application, because, as here, Plaintiff's benefits were not in suspended status but terminated due to incarceration exceeding twelve months.

The Court agrees with the Commissioner.  Once Plaintiff was incarcerated for a period exceeding twelve consecutive months, his benefits were terminated.  20 C.F.R. § 416.1335.  "To resume benefits, Plaintiff must reapply and submit a new application."  Hill v. Astrue, 2012 WL 3361448, at *5, 156 Soc. Sec. Rep. Serv. 186 (D. Or. 2010); see also Roark v. Comm'r of Soc. Sec., 2011 WL 6751190, at *11 (S.D. Oh. 2011) (and cases cited therein).  The failure to obtain evidence from the prior application does not make the current application incomplete.  Hill, 2012 WL 3361448, at *5.  The prior record evidence may have been relevant to the issue of Plaintiff's significantly sub-average intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period.  For reasons to be discussed, the Court finds that the current record demonstrated such deficits, making ALJ Greener's failure to consider such prior evidence harmless.  Plaintiff's claim on this ground is therefore denied.

**b. Whether Plaintiff's Major Depressive Disorder is Sufficiently Severe.**

Plaintiff claims that the Commissioner erred by failing to find his major depressive disorder to be a severe impairment.  The Commissioner responds that there is insufficient evidence in the record to conclude that this condition met the durational requirements.

The durational requirement of 20 C.F.R. § 416.909 requires an impairment to have lasted, or be expected to last, for a continuous period of at least twelve months.  See Barnhart v. Walton, 535 U.S. 212 (2002).  The period of time when Plaintiff suffered from depression is alleged to be between December 2008 and January 2009.  T. 217.  Plaintiff was incarcerated in February 2009, with no further evidence of continuing treatment thereafter.  This is below the twelve month durational requirement.  Thus, the Court finds there was substantial evidence for ALJ Greener's conclusion that the durational requirements of 42 U.S.C. § 423(d)(1)(A) and 20 C.F.R. § 416.909 were not met.  Plaintiff's claim on this ground is therefore denied.

**c. Whether Plaintiff's impairments meet the criteria for Listing § 12.05.**

Plaintiff claims that his mental retardation met the requirements of Listing § 12.05. Pursuant to § 12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  Batzo v. Astrue, 700 F. Supp.2d 242, 248 (N.D.N.Y. 2010).  "The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. . . "  20 C.F.R. § 404 app. 1.  Mental retardation is established when one of four sets of criteria are met.  A claimant who is found to meet these requirements is presumed disabled at step

three without further inquiry.  Batzo, 700 F. Supp.2d at 248; see 20 C.F.R. §
404.1520(a)(4)(iii).

Substantial evidence existed to conclude that Plaintiff did not fall within Sections (A)
through (D).  It is reasonable to presume that Plaintiff's condition manifested before age 22,
as there was an absence of alleged evidence of any brain trauma or other injury that affected
his cognitive functioning.  See Rivera v. Apfel, 2000 U.S. Dist. LEXIS 15396 (W.D.N.Y.
2000).  This conclusion is substantiated by Plaintiff's receipt, prior to age 22, of disability
benefits and poor scholastic results on various tests.

Plaintiff failed to meet Section (A) as there is significant evidence in the record that
he took care of his personal needs, prepared easy meals, cleaned, did laundry, managed his
money, and was able to follow simple instructions.  T. 190, 207.  Plaintiff had a full scale IQ
score of 64.  T. 189.  Because this is above 59, Plaintiff failed to meet Section (B).  Though
his full scale IQ score was within the range of 60-70, there was sufficient evidence to
conclude that Plaintiff did not have another physical or mental impairment imposing
additional and significant work-related limitations on function for Section (C).  Lastly, though
Plaintiff's full scale IQ score was within the range of 60-70, Plaintiff failed to meet Section
(D)'s requirements of having at least two marked difficulties in: (1) activities in daily living; (2)
social functioning; (3) maintaining concentration, persistence or pace; or (4) repeated
episodes of decompensation, each of extended duration.  T. 202.  This is because Plaintiff
received ranks of mild, none, moderate, and insufficient evidence, respectively; none ranked
marked or extreme.  T. 202.  Although there existed some evidence in the record concerning
Plaintiff's depressive disorder, it was insufficient in relating it to job performance and

functioning.  As such, ALJ Greener did not err in finding that Plaintiff's disorder did not meet Listing § 12.05 (11).

**d. Whether ALJ Greener's RFC finding is supported by substantial evidence**.

Plaintiff claims that ALJ Greener erred concerning her RFC finding.  Plaintiff argues that there is no opinion from a treating source concerning the limitations resulting from his mental retardation, learning disorder and depressive disorder and that ALJ Greener failed to develop the record in this regard.  Plaintiff further contends that ALJ Greener improperly relied upon the opinions of two non-examining state agency personnel: (1) Dr. Shapiro, a consultant; and (2) Dr. Apacible, a medical reviewer.  Plaintiff contends that ALJ Greener improperly afforded great weight to the non-examiner's opinions.

*i. RFC Determinations*

RFC is what a claimant is capable of doing despite his or her impairments. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  The RFC is determined by considering all relevant evidence, consisting of, inter alia, physical abilities, symptoms including pain, and descriptions, including that of the claimant, of limitations that go beyond symptoms.  Martone, 70 F. Supp. 2d at 150; §§ 404.1545, 416.945.  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  Martone, 70 F. Supp. 2d at 150.  Physical abilities are determined by evaluation of exertional and nonexertional limitations in performing a certain category of work activity on a regular and continuing basis.  Martone, 70 F. Supp. 2d at 150; see also 20 C.F.R. §§ 404.1567, 404.1569a, 416.967, 416.969a.

Thus, to determine whether a claimant can do a certain category of work, the ALJ must determine plaintiff's strength limitations, or exertional capacity, which includes the ability

to sit, stand, walk, lift, carry, push and pull.  Martone, 70 F. Supp. 2d at 150; §§ 404.1569a(a), 416.969a(a).  Nonexertional limitations include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching."  Martone, 70 F. Supp. 2d at 150; §§ 404.1569a(c)(vi), 416.969a(c)(vi).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  Martone, 70 F. Supp. 2d at 150 (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient.  Id.; see also Sullivan v. Sec'y of Health & Human Servs., 666 F. Supp. 456, 460 (W.D.N.Y. 1987); Aponte v. Sec'y of Health & Human Servs. of U.S., 728 F.2d 588, 588 (2d Cir. 1984).  The RFC is then used to determine particular types of work a claimant may be able to perform.  Martone, 70 F. Supp. 2d at 150; §§ 404.1545(a), 416.945(a).

*ii. Weight to non-examiner opinions*

Under the regulations, the Commissioner applies six factors to determine what weight to give opinions from treating sources, consulting physicians (consultants whose examination of a claimant is paid for by SSA), and non-examining sources (generally disability personnel employed by SSA who draw medical conclusions based on the record).  These factors are: (1) the examining relationship; (2) the length and nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors.  20 C.F.R. §416.927(d).  In evaluating these six factors, no single factor is necessarily dispositive.

Here, the RFC determination is supported by substantial evidence and without legal error.  Plaintiff had an extensive employment history.  He worked various jobs including as a cleaner, sander and, most recently, twenty hours a week as an office cleaner.  T. 187.  Further, the consultative reports were consistent with one another and the other objective medical evidence.  Both Drs. Shapiro and Apacible opined that Plaintiff was able to perform basic work.  T. 190-91, 208.  These doctors also observed Plaintiff's well-groomed appearance, good attention and concentration, cooperative and alert nature, orientation with the appropriate place and time, capability of dealing with stress and intact insight and judgment.  T. 188-89, 190, 207-08.  Lastly, the prison performed a physical and cleared Plaintiff for basic work.  T. 229.  Together, these qualities are consistent with an ability to perform basic work.  Thus, ALJ Greener did not err in finding that Plaintiff had the RFC to perform basic work.

As for the weight afforded to Drs. Shapiro and Apacible's opinions as non-examiners, this Court also finds no legal error.  Although Drs. Nesterenko and Johnson subsequently treated Plaintiff, they only saw him once each.  T. 214, 216.  Moreover, many of the conclusions contained in these reports were based on Plaintiff's own claims concerning depression, nightmares and hearing voices.  Additionally, those reports do not appear consistent with the vast majority of other available record evidence.  For example, on February 5, 2007, intelligence evaluations by Dr. Shapiro contained Plaintiff's denials of any psychiatric history or insomnia, nightmares or hearing of voices.  T. 187.  Yet, on December 15, 2008, Plaintiff contradicts his prior statements, alleging he has heard voices since age 11 or 12.  T. 216, 218.  Accordingly, these reports from the two later physicians are of limited

value.

### e. Whether ALJ Greener failed to apply the psychiatric review technique.

Plaintiff claims that ALJ Greener failed to complete the psychiatric review technique.  Beyond the five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework."  Petrie v. Astrue, 412 F. App'x 401, 408 (2d. Cir. 2011) (quoting Kohler v. Astrue, 546 F.3d. 260, 265 (2d Cir. 2008)); see also 20 C.F.R. §§ 404-1520a(a), 416.  This technique "requires a reviewing authority to determine first whether the claimant has a 'medically determinable mental impairment.' " Petrie, 412 F. App'x at 408 (quoting Kohler, 546 F.3d at 265–66; 20 C.F.R. § 404.1520a(b)(1)).  "If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' . . . which specifies four broad functional areas."  Petrie, 412 F. App'x at 408 (quoting Kohler, 546 F.3d at 266; 20 C.F.R. § 404.1520a(b)(2)).  These areas are: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation."  Petrie, 412 F. App'x at 408 (quoting Kohler, 546 F.3d at 266; 20 C.F.R. § 404.1520a(c)(3)); see also 20 C.F.R § 416.920a(c)(3).

Each of the first three areas is rated on a scale of "[n]one, mild, moderate, marked, and extreme."  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  The fourth area is rated on a scale of "[n]one, one or two, three, four or more."  Id.  "[I]f the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits."  Petrie, 412 F. App'x at 408 (quoting Kohler, 546 F.3d at 266).  By contrast, if the claimant's mental impairment is severe, then the

- 17 -

reviewing authority must "compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders" to determine whether the impairment "meets or is equivalent in severity to any listed mental disorder." Petrie, 412 F. App'x at 408 (quoting Kohler, 546 F.3d at 266); see also 20 C.F.R. § 404.1520a(d)(2)). If yes, then the claimant is "disabled." Id. If no, the reviewing authority must then assess the claimant's residual functional capacity. Id. (citing 20 C.F.R. § 404.1520a(d)(3)).

The regulations also require that the application of the special technique be documented. Id. (citing 20 C.F.R. § 404.1520a(e)). Generally, a medical or psychological consultant will complete a standard document, known as a "Psychiatric Review Technique Form" ("PRTF"). Id. Pursuant to the regulations, the ALJ's written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.' " Id. (quoting 20 C.F.R. § 404.1520a(e)(2)).

Here, it is evident that ALJ Greener adequately employed the psychiatric review technique. ALJ Greener sufficiently describes with support from Exhibits 1F and 2F that Plaintiff, though possessing a "medically determinable mental impairment," did not rise to the severity of functional limitation necessary pursuant to paragraph (c). 20 C.F.R. § 404.1520a(b)(2)); see T. 21. ALJ Greener methodically goes through each step, addressing Plaintiff's abilities concerning daily living, social functioning, abilities concerning concentration, persistence and pace and, lastly, episodes of decompensation. T. 21-22. This Court finds the conclusions made by ALJ Greener in respect to each were supported by substantial evidence and are affirmed. Further, though ALJ Greener failed to mention specifically Dr. Apacible's findings regarding Plaintiff's limitations, she did not err as Dr. Apacible found no marked limitations.

**f. Whether ALJ Greener failed to apply the appropriate legal standards in assessing Plaintiff's credibility.**

The ALJ has discretion to determine a claimant's or other witnesses' credibility regarding his subjective complaints of pain. Mimms v. Heckler, 750 F.2d 180, 185-86 (2d Cir. 1984). After assessing the claimant's testimony, the objective medical evidence, and other factors, the ALJ may accept or reject a claimant's subjective testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2007); Martone v. Apfel, 70 F. Supp.2d 145, 151 (N.D.N.Y. 1999). When a claimant's testimony is rejected, the ALJ must specify reasons for doing so such that a reviewing court can determine whether those reasons were legitimate and supported by substantial evidence. Martone, 70 F. Supp.2d at 151 (citing Brandon v. Bowen, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).

The ALJ may not ignore subjective allegations of pain which are supported by the establishment of a "medically determinable impairment which could reasonably be expected to produce th[at] type of pain." Diaz v. Bowen, 664 F. Supp. 725, 730 (S.D.N.Y. 1987) (citing Marcus v. Califano, 615, F.2d 23, 27-28 (2d Cir. 1979)). However, the ALJ does not have to accept these allegations without exception. Rather, the ALJ balances the objective medical evidence, the claimant's daily activities, medical opinions and other evidence. See Diaz, 664 F. Supp. at 730 (citing Losco v. Heckler, 604 F. Supp. 1014, 1018 (S.D.N.Y. 1985)); Martone, 70 F. Supp.2d at 151.

In considering Plaintiff's symptoms, ALJ Greener compared Plaintiff's subjective complaints to the objective medical evidence, along with Plaintiff's testimony regarding his ability to do daily activities, and concluded that Plaintiff's complaints were not fully credible. T. 23. ALJ Greener cited to Social Security Ruling 96-3p and 96-4p which specifies that in the

absence of substantiating evidence, controlling weight cannot be give to subjective complaints, no matter how intensely expressed.  The Court finds that ALJ Greener's conclusion that Plaintiff's subjective allegations were not consistent with the record or the objective medical evidence was reasonable and supported by substantial evidence.

Though ALJ Greener made a factual error in stating that educational records did not demonstrate Plaintiff was in an special education program, the error is harmless. Similarly, ALJ Greener's failure to consider the ineffectiveness of Plaintiff's medication also does not affect the outcome.  It is apparent from the record that, regardless of the medication's ineffectiveness, Plaintiff was still able to perform work.

### g. Whether ALJ Greener's 5 step determination was not supported by substantial evidence and is the product of legal error.

Plaintiff claims that ALJ Greener's Step 5 determination was not supported by substantial evidence and is the product of legal error because she relied solely upon the Medical-Vocational Guidelines § 204, without obtaining the testimony of a vocational expert. T. 26.

"If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 605 (2d Cir. 1986)).  But, the "mere existence of a nonexertional impairment does not automatically ... preclude reliance on the guidelines." Zabala v. Astrue, 595 F.3d 402, 410-11 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d 601, 603 (2d Cir. 1986)).  A nonexertional impairment "significantly limit[s]" a claimant's range of work when it causes an "additional loss of work capacity beyond a negligible one or, in other words, one that so

narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Zabala, 595 F.3d at 411 (quoting Bapp, 802 F.2d at 605-06).

Here, ALJ Greener could rely on the guidelines alone because she found that Plaintiff's possible range of work was not so narrow as to deprive him of meaningful employment opportunities. Dr. Apacible found Plaintiff to have moderate difficulty in the abilities to: (1) accept instructions and respond appropriately to criticism from supervisors; (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (3) sustain an ordinary routine without special supervision; (4) carry out detailed instructions; (5) understand and remember detailed instructions; and (6) maintain concentration, persistence or pace. T. 206-07. However, other medical findings by Dr. Apacible within the same evaluation and testimony by Plaintiff support ALJ Greener's determination that he had meaningful employment opportunities. Further, ALJ Greener considered Dr. Shapiro's medical findings and his ultimate conclusion which stated that "although [Plaintiff] functioned in the mild range of mental retardation, he was able to perform rote tasks and could work in an appropriate setting in a position for which he had been adequately trained." T. at 23. Thus, there is substantial evidence in the record that Plaintiff's disability did not rise to the requisite significance. Consequently, ALJ Greener's Step 5 determination, without a vocational expert consultation, is not the product of legal error.

## VI. CONCLUSION

For the foregoing reasons, the Court finds that the ALJ Greener's decision is supported by substantial evidence. Accordingly, Defendant's Motion is **GRANTED** and the decision of the Commissioner is **AFFIRMED**.

IT IS SO ORDERED.

Dated:January 4, 2013


Thomas J. McAvoy
Senior, U.S. District Judge